UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JULIENNE MOSES, *as beneficiary of* PAUL
MOSES, *deceased*,

Plaintiff,

-v-

REVLON INC. *et al.*,

Defendants.

No. 15-cv-4144 (RJS)
OPINION AND ORDER

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff Julienne Moses, proceeding *pro se*, brings a claim under § 502(a)(1)(B) of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(b), against

Defendants Revlon Inc., Brian Goldberg, John Ciccone, Aurora National Life ("Aurora"), and

Linda Drake.  Plaintiff alleges that, as the beneficiary of her late husband, Paul Moses, she is owed

certain benefits under his pension plan.  Defendants have moved to dismiss the complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it is time-barred and improperly

names Goldberg, Ciccone, Aurora, and Drake, who are not plan trustees or administrators.  For the

reasons that follow, the Court grants Defendants' motions.

I. BACKGROUND[1]

Plaintiff's late husband, Paul Moses, worked for Revlon for twenty-five years prior to his

death in 1989 at the age of fifty.  (Compl. at 5.)  On December 7, 1987, Mr. Moses went on medical

---

[1] The following facts, unless otherwise noted, are drawn from the complaint (Doc. No. 1 ("Compl.")) and from the documents attached thereto, incorporated therein by reference, or otherwise integral to Plaintiff's claims, as well as matters of which this Court may take judicial notice.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In resolving the instant motions, the Court has also considered Defendants' memoranda of law in support of their motions to dismiss (Doc. Nos. 37 ("Aurora Mem."), 39 ("Drake Mem."), 42 ("Revlon Mem.")), Plaintiff's submissions in opposition to Defendants' motions to dismiss (Doc. Nos. 43 ("Pl. Opp."), 49), and Defendants' reply briefs (Doc. Nos. 45, 46, 47).

leave due to a brain tumor, and he received long term disability benefits from Unum, an insurance company, and the U.S. Social Security Administration ("SSA") until his death.  (*Id.*)  After Mr. Moses's death in 1989, Plaintiff, as her husband's beneficiary, began receiving a $460-per-month "Disability Pension" paid by Northern Trust – a monthly payment Plaintiff still receives today. (*Id.* at 5, 8.)

Plaintiff alleges that these benefit payments were inconsistent with the pension benefit that her husband elected prior to his death.  Specifically, Plaintiff contends that her husband was entitled to a "Vested Pension" paying $1,600 per month beginning when Mr. Moses would have attained the age of sixty-five (i.e., in 2004), and that she was entitled to receive the same monthly payment upon her husband's sixty-fifth birthday in the event of his death.  (*Id.* at 5–7.)  Plaintiff asserts that, because Mr. Moses was incompetent at the time of his election, he chose the Vested Pension through his attorney.  (*Id.* at 5.)  She further alleges that she followed up on her husband's election by sending three letters of her own to Revlon, seeking to confirm the election of the Vested Pension and requesting the forms necessary to complete that election.  (*Id.*)  Revlon never sent the requested forms.  (*Id.*)  Instead, a representative from Revlon sent Plaintiff a letter offering the Disability Pension and explaining that it would "fill the gap of years prior to the start of the Vested Pension."  (*Id.* at 6.)

In 2004, when Plaintiff's husband would have attained the age of sixty-five, Plaintiff did not begin receiving the $1,600 monthly Vested Pension payments (*id.* at 7–8) and, instead, continued receiving the $460 monthly Disability Pension payments (*id.* at 5, 8).  Notwithstanding her alleged entitlement to the $1,600 monthly Vested Pension payments, Plaintiff took no action until 2013.  (*Id.* at 6.)  By way of explanation, Plaintiff maintains that, after her husband's death, she "lost track" of his disability and pension benefits and was unable to "prove" that she was being

underpaid until she "found the documents" evidencing Mr. Moses's election of the Vested Pension in storage boxes while preparing her will and "attempting to clean up" in 2013.  (*Id.*)

After rediscovering the Vested Pension documents, Plaintiff contacted the SSA for help, believing that these documents – which by 2013 had been in Plaintiff's possession for over twenty years – demonstrated her entitlement to $1,600 monthly pension payments, instead of the $460 monthly payments she had been receiving since her husband's death.  (*Id.*)  According to Plaintiff, the SSA "found the pension at Aurora" (*id.*), an insurance company.  Apart from this allegation, the only other facts Plaintiff pleads about Aurora are that her husband's pension included an "Aurora Annuity" issued on April 1, 1986 and "transferred to Aurora" on September 3, 1999 (*id.* at 5), and that, after the SSA "found the pension at Aurora," Aurora sent Plaintiff a notice of benefits reporting that Plaintiff was entitled to certain back payments of benefits from 2004 (*id.* at 6).  Plaintiff alleges that these back payment amounts nevertheless "did not match the elections [Mr. Moses] made with [his] attorney."  (*Id.*)

After receiving the notice from Aurora, Plaintiff "contacted Revlon directly," and Revlon "declared that this was all a mistake" and that Plaintiff had been receiving the correct benefit payments and was "not entitled to any other payment."  (*Id.*)  Plaintiff then contacted the "Department of Labor/ERISA," which informed her that the "payment of $460 is *calculated* correctly," and that, if Plaintiff disagreed, she had the right to bring an action in federal court "against the plan under [§] 501(a)(1)(B) [sic] of ERISA."[2]  (*Id.* (emphasis in original).)

---

[2] Plaintiff mistakenly cites § 501(a)(1)(B) of ERISA as the bases for her claim and federal jurisdiction (*see* Compl. at 2, 6), though Plaintiff's opposition papers cite § 502(a)(1)(B) (*see* Pl. Opp. at 4), and a letter Plaintiff filed shortly after filing her opposition papers states:  "if I did not identify the exact 502(a) correctly I wish to correct that . . . because obviously I seek personal money as compensation not money to the plan" (Doc. No. 44).  Since there is no § 501(a)(1)(B) in ERISA and since § 502(a)(l)(B) is the correct civil enforcement provision for a claim that Plaintiff is owed benefits, *see Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("The relief that the plaintiffs seek, recalculation of their benefits consistent with the terms of the Plan, falls comfortably within the scope of § 502(a)(1)(B) . . . ."), the Court construes the complaint as being brought under § 502(a)(1)(B) of ERISA.

Plaintiff initiated this action on May 21, 2015, alleging that she is owed benefits under her husband's pension plan.  (Doc. No. 1.)  Defendants moved to dismiss the complaint on November 23, 2015.  (Doc. Nos. 36, 38, 40.)  The motions were fully briefed by January 8, 2016.  (Doc. Nos. 45, 46, 47.)  On January 19, 2016, Plaintiff filed an unauthorized sur-reply (Doc. Nos. 48, 49), which does not affect the Court's decision, and accordingly the Court need not consider whether it should accept the sur-reply notwithstanding Rule 2.B of the Court's Individual Rules and Practices, which prohibits sur-replies filed "without prior permission of the Court."[3]

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests."  *ATSI Commc'ns*, 493 F.3d at 98; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").  To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *ATSI Commc'ns*, 493 F.3d at 98.  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation

---

[3] In addition, on August 4, 2016, Plaintiff filed a motion seeking "an order for the Defendants to pay [Plaintiff] all the pension money plus interest due" at the rate elected by Mr. Moses's attorney "commencing from the elected 2004 date and ongoing to date."  (Doc. No. 57.)  Plaintiff also filed a proposed "Notice of Hearing" on that motion.  (Doc. No. 58.)  Because Plaintiff's motion simply reiterates the relief Plaintiff seeks in her complaint, which the Court dismisses for the reasons set forth below, the motion and the hearing request are denied.

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.  However, "[w]here, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests.  Nonetheless, [even] a *pro se* complaint must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

III.  DISCUSSION

A.  Aurora, Drake, Goldberg, and Ciccone Are Not Proper Defendants

All of the defendants except Revlon seek dismissal of Plaintiff's complaint on the ground that they are not proper defendants in an ERISA action to recover unpaid benefits.  (Aurora Mem. at 3–5; Drake Mem. at 2–3; Revlon Mem. at 8–9.)  The Court agrees.  "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002).  "[I]f a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (emphasis in original).  In addition, the Second Circuit has recently held that, "where the claims administrator has 'sole and absolute discretion' to deny benefits and makes 'final and binding' decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a § 502(a)(1)(B) action for benefits." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir.), *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506 (2015).  While the Second Circuit did not decide "whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)," *id.* at 132 n.5, it is nevertheless clear that "discretion alone is not enough to meet the statutory definition of an ERISA Plan 'administrator,'" *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96,

5

107 (S.D.N.Y. 2008) (citing 29 U.S.C. § 1002(21)(A) and *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 434 (S.D.N.Y. 2005)).

      Plaintiff alleges no facts that support her naming Aurora, Drake, Goldberg, or Ciccone as defendants.  With respect to Drake, Goldberg, and Ciccone, Plaintiff simply alleges that they are "representatives of . . . Revlon and Aurora" with whom Plaintiff "ha[s] been allowed to connect." (Compl. at 6.)  With respect to Aurora, Plaintiff alleges that the SSA "found" her husband's pension "at Aurora" and that Aurora provided her with information about her benefits.  (*Id.*) Plaintiff also asserts in her opposition brief that Aurora is an administrator because, as the insurer that issued Mr. Moses's annuity, Aurora is a "payer of the pension."  (Pl. Opp. at 6.)  However, "an insurer to an ERISA plan is generally not a proper defendant in a recovery of benefits claim unless it meets the statutory definition of 'administrator' under [ERISA]," *Schnur*, 621 F. Supp. 2d at 109 (citing 29 U.S.C. § 1002(16)(A); *Chapman*, 288 F.3d at 509; and *Crocco*, 137 F.3d at 107 & n.2), and Plaintiff alleges nothing suggesting that Aurora – or Drake, Goldberg, or Ciccone – meets that definition.  Plaintiff does not allege that her husband's pension plan "specifically designates" any of these defendants as an administrator or trustee.  *See Crocco*, 137 F.3d at 107. Nor does Plaintiff allege that any of them "exercise[d] total control" – or *any* control, for that matter – "over claims for benefits."  *See N.Y. State Psychiatric Ass'n*, 798 F.3d at 132.  Plaintiff simply offers no facts suggesting that Aurora, Drake, Goldberg, or Ciccone are "administrators" or "trustees" of her husband's pension plan, and they obviously are not the plan itself. Accordingly, the Court finds that Plaintiff has failed to allege claims against Aurora, Drake, Goldberg, and Ciccone.  *See Chapman*, 288 F.3d at 509 ("only the plan and the administrators and trustees of the plan in their capacity as such may be held liable").

B.  Plaintiff's Claim Is Time-Barred

Revlon seeks dismissal of Plaintiff's complaint on the ground that it is time-barred. (Revlon Mem. at 4–8.)  Aurora, Goldberg, and Ciccone also seek dismissal on this alternative ground.  (*Id.*; Aurora Mem. at 5–6.)  "The lapse of a limitations period is an affirmative defense that a defendant must plead and prove.  However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citation omitted).  Plaintiff brings this action pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(b).  (Compl. at 2.) ERISA "does not prescribe a limitations period for 29 U.S.C. § 1132 actions . . . .  Therefore, the applicable limitations period is 'that specified in the most nearly analogous state limitations statute.'"  *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009).  Here, "[t]he parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'"  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).  Accordingly, "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies as it is most analogous to § 1132 actions."  *Burke*, 572 F.3d at 78.

"As the Supreme Court has noted, the length of a limitation period for instituting suit in federal court 'inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.'"  *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975)). "Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses."  *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 271

(1985)).  "For these reasons, statutes of limitation 'are not to be disregarded by courts out of a vague sympathy for particular litigants.'"  *Id.* (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).  "Indeed, strict adherence to limitation periods 'is the best guarantee of evenhanded administration of the law.'"  *Id.* (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

As the principles above make clear, the question before the Court is a limited one:  whether Plaintiff initiated this action within six years of the date her ERISA claim accrued.  "[A] cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits."  *Carey*, 201 F.3d at 49.  Here, Plaintiff alleges that she received incorrect benefit payments.  (Compl. at 5.)  "[S]imply receiving a lower pension payment is not enough to put a pensioner on notice of a miscalculation."  *Novella v. Westchester Cty.*, 661 F.3d 128, 148 (2d Cir. 2011).  However, "when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation," "notice of a miscalculation can be imputed to a pensioner[,] and the statute of limitations will start to run."  *Id.* at 147.

The *Novella* test is a "case-by-case reasonableness inquiry."  661 F.3d at 147.  In adopting it, the Second Circuit cited with approval "the Third Circuit's reasoning in [*Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516 (3d Cir. 2007)], which [the Second Circuit] read to endorse not a strict first-payment theory . . . but rather a similar reasonableness approach."  *Novella*, 661 F.3d at 147.  In *Miller*, the Third Circuit held that plaintiff's claim accrued when he "began receiving disability payments erroneously based on [his] *former* salary," despite allegedly being entitled to "disability payments of sixty percent of his *current* salary."  *Miller*, 475 F.3d at 518, 522 (emphasis added).  The court reasoned that plaintiff's initial receipt of "monthly checks based on a simple

calculation of sixty percent of his salary should have alerted him that he was being underpaid," and therefore the initial underpayment "constituted a repudiation of his right to greater payment." *Id.*

The circumstances here arguably present a repudiation even clearer than that in *Miller*. Following her husband's passing in 1989, Plaintiff began receiving pension payments of $460 per month, which Plaintiff alleges was intended to "fill the gap of years prior to the start of" the $1,600 monthly Vested Pension payments in 2004, when Plaintiff's husband would have turned sixty-five. (Compl. at 5–6.) In 2004, however, when Plaintiff purportedly should have begun receiving $1,600 per month, she continued to receive $460 per month. (*Id.* at 5, 8.) Similar to *Miller*, the magnitude of the discrepancy here rendered the supposed miscalculation obvious and constituted a clear repudiation of Plaintiff's claim to a $1,600 monthly benefit commencing in 2004. *See Miller*, 475 F.3d at 522. The obviousness of the alleged error is bolstered by the fact that Plaintiff discovered it herself, without any expert help, upon her own review in 2013 of documents that had been in her possession for over twenty years. (*See* Compl. at 6.)[4]

Moreover, Plaintiff alleges no legally sufficient basis for her failure to review these documents many years earlier. The fact that Plaintiff "lost track" of the details of her husband's pension election following Mr. Moses's death (*id.*) does not permit the Court to toll the six-year statute of limitations. "Equitable tolling is 'applicable only in rare and exceptional circumstances,'

---

[4] Although the magnitude of the alleged miscalculation here constitutes a clear repudiation, the Court disagrees with Defendants to the extent they argue for a bright-line rule, whereby a benefits claim accrues upon *any* underpayment, regardless of amount. (*See* Doc. No. 42 at 6 ("A non-payment of a benefit on the date(s) on which the benefit was to be paid is a clear repudiation of a claim for the benefit.").). The Second Circuit expressly rejected that approach in *Novella*, holding that a "strict first-payment theory" "is too harsh in that it places the burden on the pensioner – a party less likely to have a clear understanding of the terms of the pension plan and their application to his case – to confirm the correctness of his pension award immediately upon the first payment of benefits, regardless of the complexity of the calculations, or of the adequacy of the defendants' explanation of the basis for the calculation." *Novella*, 661 F.3d at 146–48. In this case, by contrast, the significant underpayment Plaintiff alleges would have been obvious to any reasonably diligent person and accordingly does not implicate *Novella*'s concern.

where it is necessary 'as a matter of fairness.'" *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014). "To qualify for equitable tolling, a plaintiff must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [the] way' of his bringing a lawsuit." *Id.* Simply neglecting to preserve a claim does not provide a basis for tolling. *See South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) ("a garden variety claim of excusable neglect" does not "justify equitable tolling"). Even difficult family circumstances, including the death or illness of loved ones, do not excuse a plaintiff from acting diligently during the limitations period to preserve her claims. *See Gager v. Principi*, 300 F. App'x 30, 31 (2d Cir. 2008) ("Although [plaintiff] contends that she lost track of time and dates due to deaths in her family and her father's illness, these circumstances are insufficient to warrant equitable tolling because she did not act diligently during the [limitations] period."); *Chalasani v. Fran*, No. 13-cv-6535 (LAK) (SN), 2015 WL 2129773, at *5 (S.D.N.Y. Feb. 13, 2015) (plaintiff's "claim[] that she suffer[ed] from major clinical depression due to losing her job and a series of family traumas," including her father's serious illness and her sister's death, did not toll statute of limitations because plaintiff "ha[d] not acted reasonably diligently in pursuing her case and ha[d] not sufficiently pleaded a disabling mental illness"), *adopted by* 2015 WL 2137707 (S.D.N.Y. May 6, 2015).

Finally, although not raised by Plaintiff, the Court notes that even a claim based on the alleged underpayments that occurred *within* six years of the initiation of this litigation (i.e., beginning in May 2009) is barred. As the Second Circuit observed in *Novella*, some courts "have applied a continuing-violation theory to the accrual of a [benefit miscalculation] claim," under which "each payment based upon an alleged miscalculation [would] constitute[] a fresh breach by the [defendants] of their duty to administer the pension plan in accordance . . . with ERISA, [and

10

thereby] give[] rise to [a] separate cause of action, and start[] the running of a new limitations period . . . for each cause of action." 661 F.3d at 145–46 (internal quotation marks omitted) (citing *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988)). While there is some logic to this approach, the Second Circuit expressly declined to adopt it in the benefit miscalculation context, finding the continuing-violation theory to be "appropriate in ERISA cases, as elsewhere, only where separate violations of the same type, or character, are repeated over time" – cases that usually involve "repeated decision-making, of the same character, by the fiduciaries" – and not where, as here, "plaintiff['s] claims are based on a single decision that results in lasting negative effects." *Id.* at 146 (internal quotation marks omitted).

For the reasons above, the Court is compelled to conclude that the statute of limitations on Plaintiff's benefits claim began to run in 2004, when, according to her own allegations, she should have stopped receiving the Disability Pension and begun receiving the Vested Pension. Accordingly, although the Court sympathizes with Plaintiff for the loss of her husband, and for what undoubtedly was a difficult time in her life, the statute of limitations expired in 2010, and Plaintiff's complaint, filed in 2015, is therefore time-barred and must be dismissed.

## C.  Leave to Amend

In a letter filed January 19, 2016, Plaintiff requests "the opportunity to restate the facts as they actually happened" should the Court grant Defendants' motions. (Doc. No. 48.) "Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be 'freely' given when 'justice so requires,' although 'a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 509–10 (S.D.N.Y. 2015) (quoting *McCarthy v. Dun*

*& Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  "Granting leave to amend is 'futile' if a revised claim still 'could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'"  *Id.* at 510 (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).  "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"  *Id.* (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.").

Because Plaintiff's claim is barred by the statute of limitations, and there is no suggestion in Plaintiff's papers of circumstances that would support tolling or the accrual of a claim within six years of the initiation of this action, "'better pleading will not cure' the defect, and granting leave to amend would be futile."  *Jordan*, 91 F. Supp. 3d at 510 (dismissing time-barred *pro se* complaint with prejudice).  Accordingly, Plaintiff's request for leave to replead is denied.

IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted, and Plaintiff's complaint is dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the motions pending at docket numbers 36, 38, 41, and 57, and to close this case.

SO ORDERED.

Dated:      August 11, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  **8/11/16**